1

2

3

4

5

6

7

8               IN THE UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10   HAROLD E. CARMONY,

11            Petitioner,              No. CIV S-03-0927 DFL JFM P

12       vs.

13   MELVIN HUNTER, et al.,,

14            Respondents.            FINDINGS AND RECOMMENDATIONS

15   _____/

16            Petitioner is a state prisoner proceeding in propria persona with an application for

17   a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges his 2000 civil

18   commitment as a sexually violent predator within the meaning of California Welfare and

19   Institutions Code §§ 6600 et seq., also known as the Sexually Violent Predator Act ("SVPA").

20   Petitioner raises 21 claims in his petition, filed May 5, 2003, that his civil commitment violates

21   the Constitution:

22            1.  The SVPA violates petitioner's state and federal protections against Bills of

23   Attainder and Bills of Pain, rendering the SVPA unconstitutional.

24            2.  The state's application of the SVPA violates the obligation of contract clause

25   of the California and United States Constitutions.

26   /////

1

1       3.  The SVPA is a penal law which should have been placed in the Penal Code.

2  The California Legislature's failure to comply with California statutory and constitutional law

3  violates federal protections of due process and equal protection clauses of the United States

4  Constitution.

5       4.  The California Department of Corrections lacked authority to implement the

6  SVPA against petitioner because the involved administrative agencies have not complied with

7  the Administrative Procedures Act of the California Government Code, violating petitioner's due

8  process and equal protection rights.

9       5.  The SVPA requires that both the Department of Corrections and the Board of

10  Prison Terms ("BPT") screen persons for SVPA consideration and both must refer the person to

11  the Department of Mental Health for further evaluation.  The BPT did not screen petitioner,

12  violating petitioner's due process and equal protection rights.

13       6.  The State of California denied petitioner due process by failing to provide

14  timely, effective, written notice; right to counsel, right to a hearing, right to present a defense,

15  right to written records of proceedings, and right to appeal decisions prior to their becoming

16  effective all at a meaningful time.

17       7.  Application of the SVPA to petitioner is punitive in effect and violates

18  constitutional protections of due process and ex post factor clauses of the California and United

19  States Constitution.

20       8.  The California SVPA violates state and federal due process prohibitions

21  against cruel and unusual punishment under the Eighth Amendment.

22       9.  The California SVPA is punitive in effect, violating the ex post facto and

23  double jeopardy clauses as well as the prohibition against cruel and unusual punishment.

24       10.  Application of the SVPA violated petitioner's due process, speedy justice and

25  fair trial rights.

26  /////

11. Petitioner's rights were violated because the California Department of Corrections, BPT, Department of Mental Health and the court did not have jurisdiction for their actions against petitioner and the prejudicial effect of delays far outweighed any justification.

12. Petitioner's constitutional rights were violated by requiring him to incriminate himself when the two psychologists testified as to his statements, and when he was compelled to testify in the prosecution's case-in-chief in the SVPA proceedings involving his liberty interest.

13. Petitioner's constitutional rights guaranteed by the Fourth Amendment and his rights under Article One, Section Thirteen of the California Constitution were violated by the state's application of the SVPA statute upon petitioner.

14. Petitioner's Sixth Amendment rights were violated by the state's application of the SVPA statute upon petitioner denying him the assistance of counsel through the SVPA proceedings and during "critical states" of the SVPA proceedings.

15. The Double Jeopardy Clause of the Fifth Amendment encompass the doctrine of res judicata and collateral estoppel and petitioner's SVPA proceedings violated principles of res judicata and double jeopardy in that the identical parties litigated the same claim and issues in the same court and the court issued its final decision on the merits in 1982.

16. Petitioner's SVPA proceedings violated the doctrine of judicial estoppel in that the state took two different and opposite positions on the same issues and thus deprived petitioner of his federal and state constitutional rights.

17. Petitioner's SVPA proceedings violated the doctrine of equitable estoppel in that the CDC and DMH actions in not referring him for treatment during his term and their officials' assurances that petitioner did not meet SVPA criteria and would not be referred, deprived petitioner of his federal and state constitutional rights.

18. There was insufficient evidence that petitioner committed predatory offenses or that he lacked volitional control.

/////

19.   There was insufficient foundation for the actuarial instruments relied upon by the state's evaluators.

20.   Petitioner's constitutional rights were violated when the psychologists relied upon multiple and unreliable hearsay evidence in writing their evaluation reports and testifying thereby depriving petitioner of his right to confrontation and cross-examination of the untested and unverified sources.

21.   The SVPA violates federal and state constitutional guarantees of substantive and procedural due process, equal protection of the laws, and prohibitions against ex post facto and double jeopardy.

FACTS AND PROCEDURAL BACKGROUND[1]

[Petitioner] was convicted on March 26, 1982, of various sexual offenses, including multiple violations of Penal Code section 288a, a sexually violent, predatory offense within the meaning of [Cal. Welf. & Inst. Code] sections 6600, subdivision (b), and 6600.1. [Petitioner's] victims were four adolescent boys, aged 11, 13, and 15.  The court found [petitioner] was not a mentally disordered sex offender, and ultimately sentenced him to state prison for a term of 34 years and four months.

Less than two months before [petitioner's] scheduled release on parole, the district attorney filed a petition to commit him as an SVP.  The matter proceeded to a court trial.

The district attorney introduced the testimony of two clinical psychologists, Dr. Debra Inman and Dr. Jack Vognsen, who based their opinions on personal interviews with [petitioner] and the records of his prior convictions in Illinois, Florida, and Sacramento.  Inman and Vognsen evaluated [petitioner] in terms of the SVPA criteria describing an SVP,[2] and concluded that [petitioner] (1) suffered from a diagnosed mental disorder –

---

[1]  The facts are taken from the opinion of the California Court of Appeal for the Third Appellate District in People v. Carmony, No. C035540 (June 13, 2002), a copy of which is attached as Exhibit B to Respondent's Answer, filed September 29, 2003.

[2]  At the time of the hearing, the SVPA defined a "sexually violent predator" as "a person who has been convicted of a sexually violent offense against two or more victims for which he or she received a determinate sentence and who has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior."  (Former § 6600, subd. (a).)

pedophilia with attraction to males, nonexclusive; (2) had committed sexually violent offenses against more than two victims in the past; and (3) was a danger to others because he was likely to engage in sexually violent behavior if released.

[Petitioner] testified over objection as part of the district attorney's case-in-chief.  He denied the factual basis for some of his convictions, but admitted he was sexually attracted to little boys 40 years ago.  [Petitioner] generally characterized his sexual relationships with the young boys as private matters between willing participants.  However, he testified he no longer believed that kind of sexual behavior was normal, and denied being sexually attracted to little boys at the time of trial due to his age and medical condition.

Dr. Theodore Donaldson, [petitioner's] expert, disagreed with Inman and Vognsen that [petitioner] had a diagnosable mental disorder.  He rejected the conclusion [petitioner] was a pedophile because, in his view, [petitioner] did not believe his conduct was wrong, and willfully engaged in it.  Although Donaldson scored [petitioner] the same as Inman and Vognsen on the Static-99 test for recidivism risk, he questioned the usefulness of long-term risk assessment in [petitioner's] case.  Donaldson doubted [petitioner] would be a risk for another 15 years due to his age and physical condition.

[Petitioner] also presented the testimony of a soon-to-retire correctional officer, a retired correctional officer, and a former inmate-turned-pastor, all of whom knew [petitioner] in prison.  Each testified to his willingness to provide [petitioner] with support if he were released to the community.

After considering the evidence and argument by counsel, the court found beyond a reasonable doubt that [petitioner] was an SVP. . . .

(People v. Carmony, slip op. at 2-4.)

ANALYSIS

I.  Standards for a Writ of Habeas Corpus

Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

/////

1   (2) resulted in a decision that was based on an unreasonable
    determination of the facts in light of the evidence presented in the
2   State court proceeding.

3   28 U.S.C. § 2254(d).

4           Under section 2254(d)(1), a state court decision is "contrary to" clearly

5   established United States Supreme Court precedents if it applies a rule that contradicts the

6   governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially

7   indistinguishable from a decision of the Supreme Court and nevertheless arrives at different

8   result. Early v. Packer, 537 U.S. 3, 7 (2002) (citing Williams v. Taylor, 529 U.S. 362, 405-406

9   (2000)).

10          Under the "unreasonable application" clause of section 2254(d)(1), a federal

11  habeas court may grant the writ if the state court identifies the correct governing legal principle

12  from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the

13  prisoner's case. Williams, 529 U.S. at 413. A federal habeas court "may not issue the writ

14  simply because that court concludes in its independent judgment that the relevant state-court

15  decision applied clearly established federal law erroneously or incorrectly. Rather, that

16  application must also be unreasonable." Id. at 412; see also Lockyer v. Andrade, 538 U.S. 63,

17  123 S.Ct. 1166, 1175 (2003) (it is "not enough that a federal habeas court, in its independent

18  review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'")

19          The court looks to the last reasoned state court decision as the basis for the state

20  court judgment. Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002). Where the state court

21  reaches a decision on the merits but provides no reasoning to support its conclusion, a federal

22  habeas court independently reviews the record to determine whether habeas corpus relief is

23  available under section 2254(d). Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).

24  II. Mootness and Standing

25          Respondent contends the petition should be denied because it is moot.

26  Respondent argues that at the time petitioner filed the instant petition on May 5, 2003, his

6

1  custody pursuant to the two year commitment commenced on May 3, 2000, had been expired for

2  over a year.

3         The Ninth Circuit Court of Appeals has addressed the question of when

4  challenges to civil commitments are rendered moot by the expiration of the term of commitment.

5  In addition, the Ninth Circuit has addressed whether a petitioner who does not file a federal

6  habeas petition until after a term of civil commitment has expired has standing to collaterally

7  attack that underlying civil commitment.  These issues are addressed briefly in the context of the

8  pending petition, and the court concludes that petitioner has standing to bring his claims and that

9  they have not been rendered moot.

10        In Hubbart v. Knapp, 379 F.3d 773 (9th Cir. 2004), the government argued that

11  the case was moot because the original term of commitment under the SVPA which was being

12  challenged by petitioner had expired and he was confined pursuant to a new two year term.  (Id.

13  at 777.)   The court rejected the argument holding that the petitioner's challenge was not moot

14  because his claims were "capable of repetition yet evading review."  (Id.)  In this regard, the

15  court found that the "capable of repetition" component of the analysis was satisfied because the

16  petitioner had already been confined pursuant to a second commitment proceeding and a third

17  petition to commit him was pending.  (Id. at 777-78 & n.1.)  The court also concluded that the

18  claimed harm evaded review because petitioner's two-year term was too short to be fully litigated

19  through the federal appellate process before the term expired.  (Id. at 778.)

20        The same is true in this case.  The state filed a second and third SVPA

21  commitment proceeding against petitioner during the pendency of this action.  Court records

22  reflect petitioner remains at Atascadero.  (Pl.'s July 8, 2005 Status Report.)  Therefore, there is a

23  reasonable expectation that petitioner will be subject to continued commitment in the future.

24  Further, petitioner could not pursue his claims through the federal appellate process before his

25  two-year term expired.

26  /////

1     Thus, like the situation presented to the court in Hubbart, petitioner's claims are

2  capable of repetition yet evading review.  Therefore, this action has not been rendered moot.

3     With respect to standing, in Jackson v. Cal. Dept. of Mental Health, 399 F.3d

4  1069 (9th Cir. 2005), the court held that a petitioner lacked standing to challenge an expired

5  SVPA confinement term where he had voluntarily recommitted himself.[3]  The court concluded

6  that the decision in Hubbart did not compel a different result because Jackson's term had expired

7  before he filed his habeas petition.  (Id. at 1072.)  Most importantly, the court found that because

8  no further recommitment petition had been filed by the state and the petitioner was in custody

9  only because he had voluntarily recommitted himself, his confinement was not fairly traceable to

10  any action by the state.  (Id. at 1074-75.)  Because the petitioner had failed to demonstrate that he

11  was suffering harm associated with the SVPA confinement order, he was found to lack standing

12  to challenge the state court's jurisdiction.

13     However, petitioner's case is factually distinguishable from Jackson.  Here, the

14  state filed a second recommitment proceeding in 2002 and filed a third recommitment proceeding

15  in 2004; the state filed a motion to combine the second and third commitments into one in 2005.

16  (Pl.'s July 8, 2005 Status Report at 3.)  Petitioner did not and has not voluntarily recommitted

17  himself and there is no indication in the record that petitioner would have remained at

18  Atascadero State Hospital if the state had not filed a subsequent petition for recommitment.

19  (Pl.'s July 8, 2005 Status Report at 4.)  Further, petitioner was required under California law to

20  remain in custody under the initial commitment order until the recommitment petition was tried.

21  See Cal. Welf. & Inst. Code § 6604 (a "person shall not be kept in actual custody longer than two

22  years unless a subsequent extended commitment is obtained from the court incident to the filing

23  of a petition for extended commitment") and § 6601.5 (if the judge determines that a petition for

24  _____

25     [3]  In order to have standing to bring a claim, a litigant must have suffered "(1) an 'injury
   in fact' that is (2) 'fairly traceable' to the state court's commitment order that he challenges, and
26  (3) that is 'likely [to be] redressed by a favorable decision.'  Jackson, 399 F.3d at 1071 (quoting
   Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 180-81 (2000).

1    commitment supports a finding of probable cause, "the judge shall order that the person be

2    detained in a secure facility until a hearing can be completed").  For these reasons, petitioner's

3    continued confinement is "directly traceable" to the state's second and third recommitment

4    petitions.  Petitioner has also suffered an "injury in fact" (continued commitment) which would

5    be addressed by a favorable decision on his claims.  Thus, petitioner has satisfied all of the

6    requirements to confer on him standing to present his claims to this court.  Jackson, 399 F.3d at

7    1071-75.  Accordingly, the court will address petitioner's claims on the merits.

8    III.  Procedural Default

9             Respondent contends fourteen of petitioner's claims (claims numbered 1-8, 13-14,

10   16-18 and 21) are procedurally barred because petitioner failed to raise them in his direct appeal.

11   The California Supreme Court denied these claims on procedural grounds based on the state's

12   prohibition on reconsidering appellate issues on habeas corpus that could have been, but were

13   not, raised on appeal.  In re Dixon, 41 Cal.2d 756 (1953); In re Lindley, 29 Cal.2d 709 (1947).

14   (Answer, Ex. D.)

15            As the United States Supreme Court has explained, in all cases in which a state

16   prisoner has defaulted his federal claim in state court pursuant to an independent and adequate

17   state procedural rule, federal habeas review of the claim is barred unless the prisoner can

18   demonstrate cause for the default and actual prejudice as a result of the alleged violation of

19   federal law, or demonstrate that failure to consider the claims will result in a fundamental

20   miscarriage of justice.  Coleman v. Thompson, 501 U.S. 722, 750 (1991).  The state rule is only

21   "adequate" if it is "firmly established and regularly followed."  Id.  (quoting Ford v. Georgia, 498

22   U.S. 411, 424 (1991)); Bennett v. Calderon, 322 F.3d 573, 583 (9th Cir. 2003) ("[t]o be deemed

23   adequate, the state law ground for decision must be well-established and consistently applied").

24   The state rule must also be "independent" in that it is not "interwoven with the federal law."

25   Park v. California, 202 F.3d 1146, 1152 (9th Cir. ), cert. denied, 531 U. S. 918 (2000) (quoting

26   Michigan v. Long, 463 U.S. 1032, 1040-41 (1983).  Even if the state rule is independent and

9

1   adequate, the claims may be heard if the petitioner can show: (1) cause for the default and actual

2   prejudice as a result of the alleged violation of federal law; or (2) that failure to consider the

3   claims will result in a fundamental miscarriage of justice.  Coleman, 501 U.S. at 749-50.

4        Although the question of procedural default "should ordinarily be considered

5   first," a reviewing court need not do so "invariably," especially when it turns on difficult

6   questions of state law.  Lambrix v. Singletary, 520 U.S. 518, 524-25 (1997); see also Busby v.

7   Dretke, 359 F.3d 708, 720 (5th Cir. 2004).  In order to determine whether petitioner's claims

8   were subject to a state procedural bar, this court would have to decide, among other things, which

9   state procedural rule(s), if any, bar which particular claim, if any, when the state procedural

10  rule(s) became firmly entrenched, and whether the rule(s) have been consistently and regularly

11  applied.  In this case, this court finds that petitioner's claims can be resolved more easily by

12  addressing them on the merits.  Accordingly, this court will assume that petitioner's claims are

13  not defaulted and will address them on the merits.

14       As explained above, the California Supreme Court did not reach the merits of

15  petitioner's claims numbered 1-8, 13-14, 16-18 and 21but denied them on procedural grounds.

16  Accordingly, there is no state court decision on the merits of those claims.  When it is clear that a

17  state court has not reached the merits of a petitioner's claim, the AEDPA's deferential standard

18  does not apply and a federal habeas court must review the claim de novo.  Menendez v. Terhune,

19  422 F.3d 1012, 1025 (9th Cir. 2005); Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003).[4]

20  Accordingly, this court will review de novo claims numbered 1-8, 13-14, 16-18 and 21.

21  /////

22  /////

23  /////

24  _____

25       [4]  Under AEDPA, factual determinations by the state court are presumed correct and can
    be rebutted only by clear and convincing evidence.  Pirtle v. Morgan, 313 F.3d 1160, 1168 (9th
26  Cir. 2002).

IV.  Petitioner's Claims

Many of petitioner's claims overlap.  To the extent possible, the court has grouped together those claims resolved by binding authority.  Some claims are referenced more than once as they contain references to separate issues.  The remaining claims will be addressed seriatim.

Petitioner raises several claims that his civil commitment violates the constitutional protections against double jeopardy and ex post facto laws as well as petitioner's rights to due process and to equal protection.  (Claims 3, 6, 7, 9, 10, 15 & 21.)

Because the California statute that petitioner challenges is identical in all relevant respects to the Kansas statute deemed civil by the United States Supreme Court in Kansas v. Hendricks, 521 U.S. 346 (1997), California's Sexually Violent Predator Act is also civil in nature.  Accord Seling v. Young, 531 U.S. 250, 260 (2001) (construing and upholding as a civil rather than punitive process Washington's sexually violent predator statutory scheme because the Washington Act is similar to the Kansas Act upheld in Hendricks ); Smith v. Doe, 538 U.S. 84 (2003)(Alaska Sex Offender Registration Act is nonpunitive and its retroactive application does not violate the ex post facto clause.); Munoz v. Kolender, 208 F.Supp.2d 1125, 1134-35 (S.D.Cal.2002) (noting that California's SVPA procedures and confinement are civil in nature rather than criminal and punitive because, among other reasons, California's statutory scheme is similar to Kansas' and Washington's).  The Act's civil nature precludes petitioner's claims that the SVPA violates the constitutional protections against double jeopardy and ex post facto laws, as well as his claims that his due process and equal protections rights were violated.  The state court correctly applied Hendricks to reject petitioner's claims that the SVPA violates the constitutional protections against double jeopardy and ex post facto laws as well as his due process[5][6] and equal protection rights.  (People v. Carmony, slip op. at 24.)  Moreover, the record

_____

[5]  Hendricks suggests that SVPA provides adequate procedural due process protections.  At least one other district court has so held.  Johnson v. Nelson, 142 F.Supp.2d 1215 (S.D.Cal.2001).

11

1   reflects that the commitment petition was filed on June 8, 1999, and petitioner was arraigned on

2   June 22, 1999, while his parole release date was not until July 29, 1999.  (CT 191; ART 1-5.)

3   Thus, petitioner was provided sufficient notice of the commitment proceedings.

4          Accordingly, the state court's decisions were not contrary to nor an unreasonable

5   application of clearly established Federal law, and petitioner's claims 9, 10 and 15 should be

6   denied.  Additionally, the court has reviewed the record de novo as to claims 3, 6,[7] 7 and 21 and,

7   in light of <u>Hendricks</u>, finds they should also be denied.

8          Petitioner's argument that his conviction violates the principles of res judicata or

9   collateral estoppel (contained within claim 15) should fail as well.  Petitioner contends that

10  because a jury determined petitioner was not a mentally disordered sex offender ("MDSO") in

11  1982, and found not amenable to treatment, the court was barred from relitigating the issue of his

12  mental health in the SVPA proceedings.

13  _____

14          Hendricks found that Kansas'[s] statutory scheme provided
            sufficient due process protections for a person subject to civil
            commitment, in part because "proper procedur[al] and evidentiary
15          standards" were present. Hendricks, 521 U.S. at 356-57, 360, 117
            S.Ct. 2072[ ]. Again, the California Supreme Court has found that
16          California's SVP Act is nearly identical to the statute upheld in
            Hendricks, and Petitioner has provided this Court with no basis for
17          disturbing that decision. See Hubbart, 19 Cal.4th at 1138, 1157, 81
            Cal.Rptr.2d 492, 969 P.2d 584[ ]. Thus, California's SVP Act
18          similarly provides sufficient procedural due process protections. . . .
    Johnson, 142 F.Supp.2d at 1230.

19

20          [6]  In 2002, the Supreme Court reconsidered the constitutionality of the Kansas Act's
    evidentiary standard and held that due process does not permit a civil commitment under the
21  Kansas Act without any lack of control determination being made.  Kansas v. Crane, 534 U.S.
    407, 410 (2002).  However, Crane did not alter any other aspect of Hendricks.  The Crane ruling
22  did not affect California's SVPA because California requires a lack of control determination
    prior to commitment.  See People v. Superior Court (Ghilotti), 27 Cal.4th 888, 915-29 & nn. 12
    & 15, 119 Cal.Rptr.2d 1, 44 P.3d 949 (2002).
23

24          [7]  Petitioner's reliance on Vitek v. Jones, 445 U.S. 480, 494-96 (1980) is unavailing.
    Vitek held that inmates have a liberty interest in classification when classification results in
25  mandatory treatment or therapy.  Mr. Vitek was characterized as a mentally ill patient and
    involuntarily transferred to a mental hospital where he was to receive mandatory behavior
    modification treatment.  Id. at 488.  Here, petitioner claims he was deprived of mental health
26  treatment during his punitive incarceration.

                                              12

1    The state court found that "collateral estoppel does not apply in light of the

2    changeable nature of a person's mental health and dangerousness, and the SVPA's emphasis on

3    his or her current, continuing threat to society." (People v. Carmony, slip op. at 7).  After noting

4    some similarities between the MDSO statute and the SVPA, the state court concluded that "the

5    different statutory purposes and procedural settings create different circumstances that require

6    litigation of [petitioner's] current mental condition in the SVPA proceedings." (Id.)  Ultimately

7    the state court found that it would be inconsistent with the legislative intent to give a 20-year-old

8    MDSO finding conclusive effect in the current SVPA proceeding." (Id. at 11.)  "[A] prior

9    finding that [petitioner] was not an MDSO is relevant, but not conclusive, on the question

10   whether [petitioner] suffers from a currently diagnosed mental disorder for purposes of the

11   SVPA." (Id. at 12.)

12       The doctrine of res judicata provides that when a court of competent jurisdiction

13   has entered a final judgment on the merits of a cause of action, the parties to the suit and their

14   privies are thereafter bound "not only as to every matter which was offered and received to

15   sustain or defeat the claim or demand, but as to any other admissible matter which might have

16   been offered for that purpose." Cromwell v. County of Sac, 94 U.S. 351, 352 (1876).

17       Under the doctrine of res judicata, a judgment on the merits in a
         prior suit bars a second suit involving the same parties or their
18       privies based on the same cause of action. Under the doctrine of
         collateral estoppel, on the other hand, the second action is upon a
19       different cause of action and the judgment in the prior suit
         precludes relitigation of issues actually litigated and necessary to
20       the outcome of the first action.

21   Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 n.5 (1979)(citations omitted)(petitioners had a

22   "full and fair" opportunity to litigate their claims in prior action brought by the SEC, and

23   petitioners were therefore collaterally estopped from relitigating the question of whether the

24   proxy statement was materially false and misleading).  The doctrine of issue preclusion, or

25   collateral estoppel, "refers to the effect of a judgment in foreclosing relitigation of a matter that

26   has been litigated and decided." Migra v. Warren City School District Board of Education, 465

13

1   U.S. 75, 77 n.1 (1984).  Three elements must be met in order to foreclose relitigation of an issue

2   under collateral estoppel:  (1) the issue at stake must be identical to the one alleged in the prior

3   litigation; (2) the issue must have been actually litigated by the party against whom issue

4   preclusion is asserted in the prior litigation; and (3) the determination of the issue in the prior

5   litigation must have been a critical and necessary part of the judgment in the earlier action.  Town

6   of North Bonneville v. Callaway, 10 F.3d 1505, 1508 (9th Cir. 1993).

7          California's Sexually Violent Predator Act ("SVPA") authorizes civil

8   commitment at the conclusion of a criminal sentence of "a person who has been convicted of a

9   sexually violent offense against two or more victims for which he or she received a determinate

10  sentence and who has a diagnosed mental disorder that makes the person a danger to the health

11  and safety of others in that it is likely that he or she will engage in sexually violent criminal

12  behavior."  Cal. Welf. & Inst. Code, § 6600(a).  In accordance with due process requirements, the

13  SVPA requires the trier of fact to find that the sexually violent predator ("SVP") is dangerous at

14  the time of commitment; statutory criteria are expressed in present tense, indicating that each

15  must exist when the verdict is rendered, and the person cannot be adjudged SVP unless he

16  "currently" suffers from diagnosed mental disorder which prevents him from controlling sexually

17  violent behavior, and which "makes" him dangerous and "likely" to refined.  U.S.C.A. Const.

18  Amend. 14; Cal. Const. Art. 1, § 7; Cal.Welf.& Inst.Code § 6600(a); Hubbart v. Superior Court,

19  19 Cal. 4th 1138, 81 Cal. Rptr. 2d 492 (1999).

20         In order for petitioner's claims to be barred under the doctrine of res judicata or

21  collateral estoppel, the issue from the second trial must be identical to the issue from the first

22  trial.  The issue at the first trial in 1982 was whether petitioner was a mentally disordered sex

23  offender, requiring commitment prior to and instead of incarceration.  The factors supporting

24  commitment under the two statutes were different and the procedures used in imposing each

25  /////

26  /////

14

1  commitment were different.[8]  Moreover, those committed as MDSO's were required to be

2  amenable to treatment, whereas sexually violent predators are not so required.  Given the SVPA's

3  requirement that the individual's *current* dangerousness be established, the issue of the

4  petitioner's mental health and his resulting danger to others at the second trial was not identical

5  to the issue litigated in the prior proceeding and was not decided at the earlier trial.  See also

6  Burris v. Hunter, 290 F.Supp.2d 1097 (C.D. Cal. 2003)(Under California law, a new petition to

7  extend an offender's commitment for another two years constitutes a new and separate civil

8  action.)  Thus, an SVPA petition brought twenty years after a jury found petitioner was not a

9  mentally disordered sex offender would constitute a new and separate civil action.  This is

10  because each civil commitment proceeding evaluates the offender's mental state and the

11  likelihood the offender will reoffend at that time.  Either of these factors could change over time.

12  Accordingly, the state court's rejection of claim 15 was not contrary to, and did

13  not involve, an  unreasonable application of clearly established Federal law.  Thus, petitioner's

14  claims that his conviction violates principles of res judicata or collateral estoppel (claim 15)

15  should also fail.

16  In claims 2, 6 and 7, petitioner contends he should have been provided sex

17  offender treatment during his punitive incarceration for his crimes.  However, the statutes cited

18  by petitioner, Cal. Penal Code §§ 1364 et seq., were repealed prior to the passage of the SVP law

19  in 1995.  Cal. Stats. 1994, c. 1190.  Thus, any intent noted in those repealed statutes were not

20  relevant to the intent expressed in the SVPA in 1995.  Moreover, the intent expressed in former

21  /////

22  /////

23  ─────────────

24  [8] Persons committed under MDO law and SVPA are not similarly situated for equal
    protection purposes regarding treatment: "Prisoners who suffer from conditions that may with

25  treatment be kept in remission are the target of the MDO Act, whereas the SVPA covers
    prisoners whose conditions pose a risk of future sexually violent criminal behavior and who may
    never be completely treated."  Sisneroz v. Whitman, 2006 WL 2583000 (E.D. Cal.2006)(quoting

26  People v. Buffington, 74 Cal.App.4th 1149, 1162-63 (3rd Dist. 1999).

1  section 1364 was for voluntary experimental treatment in some instances.[9]  There was no

2  provision for mandatory treatment.  After de novo review, petitioner's claims 2, 6 and 7 should

3  be denied.

4          In claims 12 and 14, petitioner alleges that his Sixth Amendment rights were

5  violated by requiring him to incriminate himself when the two psychologists testified as to his

6  statements, and when he was compelled to testify in the prosecution's case-in-chief in the SVPA

7  proceedings involving his liberty interest (claim 12) and by the state's application of the SVPA

8  statute upon petitioner denying him the assistance of counsel through the SVPA proceedings and

9  during "critical stages" of the SVPA proceedings (claim 14).  Petitioner's claim 6 also included a

10  Sixth Amendment right to counsel claim.  Finally, in claim 20, petitioner alleges his Sixth

11  Amendment right to confrontation and cross-examination were violated because the

12  psychologists relied on hearsay evidence.

13          This argument fails because the commitment proceedings under the
SVP Act are civil, not criminal.

14

15          The "fact that a proceeding will result in loss of liberty does not
ipso facto mean that the proceeding is a 'criminal prosecution' for
purposes of the Sixth Amendment." *Middendorf v. Henry*, 425

16  U.S. 25, 37, 96 S.Ct. 1281, 47 L.Ed.2d 556 (1976).  We recognize
that involuntary civil commitment "constitutes a significant

17  deprivation of liberty that requires due process protection."
*Addington v. Texas*, 441 U.S. 418, 425, 99 S.Ct. 1804, 60 L.Ed.2d

18  323 (1979). But the Sixth Amendment right to confrontation does
not attach in civil commitment proceedings. *Cf. United States v.*

19  *Sahhar*, 917 F.2d 1197, 1205-06 (9th Cir.1990) ("[F]ederal
commitment serves a regulatory, rather than punitive, purpose and

20  section 4246 [permitting civil commitment of mentally
incompetent prisoners due for release] need not incorporate the

21  right to a jury trial.").  Indeed, "the procedures required for a civil
commitment are not nearly as rigorous as those for criminal trials,

22  /////

23

24      [9]  California Penal Code section 1364, which was in effect from 1982 to 1995, provided
that "[t]he State Department of Mental Health shall develop a voluntary experimental treatment

25  program that can be evaluated, limited to no more than 50 beds, for persons convicted of
[certain] sex offenses . . . .  [¶] The treatment shall only be done during the last two years of
incarceration, and only persons who voluntarily consent shall be included in the program."

26  Woodard v. Mayberg, 242 F.Supp.2d 695 (N.D. Cal. 2003).

or even juvenile proceedings." *Id.* at 1206 (internal citations omitted).

*Carty v. Nelson*, 426 F.3d 1064, 1073 (9th Cir. 2005), cert. denied, 126 S.Ct. 2037 (2006). Claims 6, 12 and 14 were appropriately rejected by the state court because these Sixth Amendment protections are not applicable in civil, SVP proceedings.  *Allen v. Illinois*, 478 U.S. 364, 374 (1986)(privilege against self-incrimination does not apply in sex offender civil commitment cases); *Seling v. Young*, 531 U.S. 250 (2001); *Hendricks*, 52 U.S. 346.  Claim 20 was appropriately rejected because petitioner does not have Sixth Amendment confrontation rights in civil commitment proceedings.  *Carty*, 426 F.3d at 1073 (sexually violent predator does not have Sixth Amendment confrontation rights in civil commitment proceedings).  Following de novo review, petitioner's claims 6, 12, 14 and 20 should also fail.

Moreover, the SVP statute provides that petitioner was entitled to counsel beginning at the probable cause hearing.  Here, petitioner was appointed counsel more than one month before the probable cause hearing, and was represented by counsel at his arraignment and other proceedings prior to the probable cause hearing.  (CT 1; ART 1-5.)  Thus, even if petitioner were entitled to the protections of the Sixth Amendment herein, the court cannot find petitioner was deprived of his right to counsel.

In claim 13, petitioner alleges his constitutional rights guaranteed by the Fourth Amendment and his rights under Article One, Section Thirteen of the California Constitution[10] were violated by the state's application of the SVPA statute upon petitioner.  This claim is barred by *Stone v. Powell*, 428 U.S. 465 (1976).  In *Stone* the United States Supreme Court held that where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus

---

[10]  Petitioner's claim concerning the California Constitution is not cognizable on habeas review because a state's interpretation of its own constitution is a matter of state law, not federal law.  *Estelle v. McGuire*, 502 U.S. 62, 68 (1991).

1   relief on the ground that evidence obtained in an unconstitutional search or seizure was

2   introduced at his trial.  Id. at 482.  Moreover, the record reflects that the commitment petition

3   was filed on June 8, 1999, and petitioner was arraigned on June 22, 1999, while his parole

4   release date was not until July 29, 1999.  (CT 191; ART 1-5.)  Thus, petitioner was provided

5   sufficient notice of the commitment proceedings.  Claim 13 should also be denied.

6           The court will now address petitioner's remaining claims seriatim.

7           In claim 1, petitioner alleges that California's Sexually Violent Predator Act, Cal.

8   Welf. & Inst. §§ 6600 et seq., is an unconstitutional bill of attainder and/or bill of pain.

9   "'[L]egislative acts, no matter what their form, that apply either to named individuals or to easily

10  ascertainable members of a group in such a way as to inflict punishment on them without a

11  judicial trial are bills of attainder prohibited by the Constitution.'"  United States v. Brown, 381

12  U.S. 437, 448-49 (1965)[11] (quoting United States v. Lovett, 328 U.S. 303, 315 (1946)).  Three

13  requirements must be met to establish a violation of the bill of attainder clause:  "[S]pecification

14  of the affected persons, punishment, and lack of a judicial trial."  Selective Serv. Sys. v.

15  Minnesota Pub. Interest Research Group, 468 U.S. 841, 847 (1984).  This court will only address

16  the first requirement because its absence here is dispositive.

17          As noted above, the SVPA is civil in nature, not criminal.  Hendricks, 521 U.S.

18  346.  The SVPA does not violate petitioner's due process or equal protection rights.  Id.

19  "However expansive the prohibition against bills of attainder, it surely was not intended to serve

20  as a variant of the equal protection doctrine, invalidating every Act of Congress or the States that

21  legislatively burdens some persons or groups but not all other plausible individuals."  Nixon v.

22  Administrator of Gen. Servs., 433 U.S. 425, 471 (1977) (footnote omitted).

23          If a law merely designates a properly general characteristic . . . and
            then imposes upon all who have that characteristic a prophylactic
24          measure reasonably calculated to achieve a nonpunitive purpose,

25  ────────────────────

26  [11]  The Brown court invalidated as a bill of attainder a law that made it a crime for
    members of the Communist Party to serve as officers of labor unions.  Id. 177 F.3d at 1141.

no attainder may be said to have resulted from the mere fact that
the set of persons having the characteristic in question might in
theory be enumerated in advance and that the set is in principle
knowable at the time the law is passed.

Laurence H. Tribe, American Constitutional Law § 10-4 at 643 (2d ed.1988).  The SVPA sets

forth a rule generally applicable to all persons possessing a certain characteristic, i.e. having been

"convicted of a sexually violent offense against two or more victims . . . and who has a diagnosed

mental disorder." (Former Cal. Welf. & Inst. Code § 6600, subd. (a).)  The rule is reasonably

calculated to achieve a nonpunitive public purpose, i.e. to protect the health and safety of the

public, in that it is "likely that he or she will engage in sexually violent criminal behavior" (id.)

in the future.

California's SVPA does not meet the specificity requirement of a bill of attainder.

Thus, petitioner's first claim should be denied.

Petitioner's second claim is that California's application of the SVPA violates the

obligation of contract clause of the California and United States Constitutions.[12]  Specifically,

petitioner contends that former California Penal Code § 1364 and California Penal Code §§ 2931

and 2934 created contract rights which the state could not impair.

Article I, section 10, subsection 1, of the United States Constitution prohibits the

states from passing any law that impairs the obligation of contracts.  Id.  However, this

prohibition is not absolute; Congress can pass retrospective civil legislation.  U.S. Trust Co. of

New York v. New Jersey, 431 U.S. 1 (1977).

California Penal Code § 1364, effective from 1982 to 1995, provided:

The State Department of Mental Health shall develop a voluntary
experimental treatment program that can be evaluated, limited to
no more than 50 beds, for persons convicted of [certain] sex
offenses . . . .  [¶] The treatment shall only be done during the last

---

[12]  Petitioner's argument concerning the California Constitution is not cognizable on
habeas review because a state's interpretation of its own constitution is a matter of state law, not
federal law.  Estelle v. McGuire, 502 U.S. 62, 68 (1991).

1    two years of incarceration, and only persons who voluntarily
     consent shall be included in the program.

2    Id.

3          A statute "is itself treated as a contract when the language and circumstances

4    evince a legislative intent to create private rights of a contractual nature enforceable against the

5    State." New Jersey, 431 U.S. at 17 n.14 (citation omitted).  There is no such language or

6    circumstances here.  Woodard v. Mayberg, 242 F.Supp.2d 695, 704 (N.D. Cal. 2003).  Former

7    § 1364 did not create a private right of contract against the government for sex offender

8    treatment.  Likewise, California Penal Code §§ 2931 and 2934 do not create a private right of

9    contract.  Sections 2931 and 2934 provide for the reduction of prisoners' sentences if the

10   prisoners meet certain conditions.  These statutes fail to demonstrate legislative intent to create a

11   contractual right.

12         Petitioner is not entitled to federal habeas relief on his second claim because it

13   cannot be said, after independently reviewing the record and applying a firm conviction standard,

14   that the state courts "clearly erred" in rejecting this claim.  Delgado, 223 F.3d at 982.

15   Petitioner's second claim for relief should be denied.

16         Petitioner's fourth claim is that the California Department of Corrections lacked

17   authority to implement the SVPA against petitioner because the involved administrative agencies

18   have not complied with the Administrative Procedures Act of the California Government Code,

19   violating petitioner's due process and equal protection rights.  Petitioner has cited no legal

20   authority to support his theory that the procedures used by the Department of Corrections, the

21   Board of Prison Terms and the Department of Mental Health do not comply with the California

22   Government Code.  Petitioner refers to Administrative Procedures Act ("APA") of the California

23   Government Code, Cal. Govt. Code §11340, et seq., which requires that before regulations can

24   be implemented, they must be adopted and filed with the secretary of state and defines regulation.

25   Id.  However, petitioner has not demonstrated or alleged that the involved agencies failed to

26   /////

20

1   adopt or file the regulations required by the SVPA in California Welf. & Institutions Code

2   §§ 6600 et seq.  This claim is without merit and should be denied.

3          To the extent petitioner challenges the manner in which the SVPA determines

4   how a potential SVP candidate is deemed to have committed a qualifying predicate offense that

5   is predatory in nature, such a claim fails to state a cognizable claim on habeas review.  California

6   does not require that the prior offenses be deemed predatory as an element of an SVP

7   commitment.  Woodard, 242 F.Supp.2d at 702; People v. Torres, 25 Cal.4th 680, 686 (2001).

8   Thus, petitioner's fourth claim should be denied.

9          Petitioner's fifth claim is that the SVPA requires that both the Department of

10  Corrections and the BPT screen persons for SVPA consideration and argues both must refer the

11  person to the Department of Mental Health for further evaluation.  Petitioner alleges the BPT did

12  not screen petitioner, violating petitioner's due process and equal protection rights.

13         Habeas corpus is unavailable for alleged error in the interpretation or application

14  of state law.  Estelle v. McGuire, 502 U.S. 62 (1981); see also Lincoln v. Sunn, 807 F.2d 805,

15  814 (9th Cir. 1987); Givens v. Housewright, 786 F.2d 1378, 1381 (9th Cir. 1986).  The standard

16  of review for a federal habeas court "is limited to deciding whether a conviction violated the

17  Constitution, laws, or treaties of the United States (citations omitted)."  Estelle v. McGuire, 502

18  U.S. at 68.  Thus, this claim is not cognizable on habeas review.

19         However, even assuming that the court could entertain this claim, it is without

20  merit.  Section 6601, read in its entirety, makes clear that review by the BPT was an alternative

21  for those prisoners facing parole revocation, despite the statute's use of the conjunction "and."

22  California Welfare and Institutions Code § 6601 provides that a potential SVP will be screened

23  prior to referral for commitment proceedings.  The reference to "BPT" was intended to apply to

24  those prisoners serving time after their parole was revoked.  Petitioner was not serving time

25  under a parole revocation, so it was unnecessary for him to be screened by the BPT.  Petitioner

26  was screened by the CDC.  The statute does not contemplate multiple screenings prior to referral

1   to the DMH for further SVP evaluation.  The fact that the CDC performs the in-custody pre-

2   screenings did not deny petitioner any equal protection or due process rights as the SVPA has

3   been determined not to violate said rights.  Hendricks, 521 U.S. at 371; Hubbart, 19 Cal.4th at

4   1171.  Claim five is without merit and should be denied.

5         Petitioner's eighth claim is that California's SVPA violates state and federal due

6   process prohibitions against cruel and unusual punishment under the Eighth and Fourteenth

7   Amendments.  Essentially, petitioner argues that the statute "impermissibly targets a group of

8   individuals based solely on their status as sex offenders."  (Petition at 48.)

9         The California Court of Appeal rejected petitioner's claim on the basis of

10  Hendricks and Hubbart.  See People v. Carmony, slip op. at 21-22.  In Hendricks, the Supreme

11  Court of the United States made clear that it has "never held that the Constitution prevents a

12  State from civilly detaining those for whom no treatment is available, but who nevertheless pose

13  a danger to others."  Id., 521 U.S. at 366.  It would be of little value to "obligate a State to release

14  certain confined individuals who were both mentally ill and dangerous simply because they could

15  not be successfully treated for their afflictions."  Id. (citations omitted); accord Hubbart, 19

16  Cal.4th at 1164-66, 81 Cal.Rptr.2d 492, 969 P.2d 584 (finding that language in Hendricks

17  "strongly suggests that there is no broad constitutional right of treatment for persons

18  involuntarily confined as dangerous and mentally impaired").  The SVPA required a finding that

19  petitioner had been "convicted of a qualifying sexually violent offense against two or more

20  victims, and proof that the diagnosed mental disorder makes the person a danger to the health and

21  safety of others in that it is likely that he . . . will engage in sexually violent criminal behavior."

22  Id.

23        Thus, petitioner is not entitled to federal habeas relief on his cruel and unusual

24  punishment claim because the California Court of Appeal's rejection of the claim was not

25  contrary to and did not involve an unreasonable application of clearly established Supreme Court

26  /////

1   precedent.  See Lockyer v. Andrade, 538 U.S. 63, 70 (2003) (discussing 28 U.S.C. § 2254(d)(1)).

2   Petitioner's eighth claim for relief should be denied.

3          In claim 11, petitioner's alleges the California Department of Corrections, BPT,

4   Department of Mental Health and the court did not have jurisdiction for their actions against

5   petitioner and the prejudicial effect of delays far outweighed any justification.  Petitioner argues

6   that the SVP trial was not timely held, the timing of the trial denied petitioner due process, and

7   denied him equal protection because he was deprived of time credits pending the commitment

8   trial.  To the extent petitioner includes allegations that his due process rights were violated, such

9   claims were resolved in claims 3, 6, and 7, at page 11 above.  California's SVPA provides no

10  requirement for when the commitment trial must commence.

11         The state court found that petitioner's characterization of "jurisdiction" was not at

12  issue because the "alleged error in the probable cause hearing [was] not jurisdictional in the

13  fundamental sense."  People v. Carmony, slip op. at 16.  The state court found no violation of

14  time deadlines because the express provision of the SVPA required "only that the Department of

15  Corrections refer the inmate for evaluation at least six months before the scheduled release date."

16  People v. Carmony, slip op. at 17 (citation omitted).  Here, petitioner was evaluated within that

17  time frame, so petitioner was not denied due process under the terms of the SVPA.

18         As for petitioner's claim that he was denied precommitment custody time credits,

19  the state court rejected his argument based on People v. Poe, 74 Cal.App.4th 826, 835 (1999)[13]

20  and People v. Hubbart, 88 Cal.App.4th 1202, 1225 (2001)(Hubbart court found Poe reasoning

21  /////

22  /////

23

24         [13]  The Poe court held, *inter alia*, that Poe was not entitled to custody credits for the
    six-month period he spent in custody between his expected release date from prison and the date

25  upon which he was committed as an SVP under either Welf. & Inst. Code, § 6604.1, which
    became effective on Apr. 14, 1998, or the SVP Act as it existed before passage of Welf. & Inst.

26  Code, § 6604.1, in light of the legislative intent to confine and treat SVP's until they no longer
    pose a threat to society.  Poe, 74 Cal.App.4th 826, Cal.Rptr.2d 437 (1999).

1   persuasive.)[14]  No United States Supreme Court case holds that the Equal Protection Clause is

2   violated by the omission of precommitment custody time credits from California's SVPA.

3   Accordingly, the state court's rejection of claim 11 was neither contrary to, nor an unreasonable

4   application of, controlling principles of United States Supreme Court precedent.  Petitioner's

5   claim 11 should be denied.

6          Petitioner's sixteenth claim is that petitioner's SVPA proceedings violated the

7   doctrine of judicial estoppel in that the state took two different and opposite positions on the

8   same issues and thus deprived petitioner of his federal and state constitutional rights.  Petitioner

9   contends the state first committed him as an SVP, whose volitional capacity must be impaired,

10  when an element of the crime of which he was convicted required general criminal intent; and

11  the state did not find he needed treatment during his prison term, but committed him as an SVP

12  for treatment after his prison term.

13         To the extent petitioner is again raising due process, equal protection and double

14  jeopardy challenges, this claim fails under Hendricks, 521 U.S. at 369-70.

15         Moreover, habeas corpus is unavailable for alleged error in the interpretation or

16  application of state law.  Estelle v. McGuire, 502 U.S. 62 (1981); see also Lincoln v. Sunn, 807

17  F.2d 805, 814 (9th Cir. 1987); Givens v. Housewright, 786 F.2d 1378, 1381 (9th Cir. 1986).  The

18  standard of review for a federal habeas court "is limited to deciding whether a conviction

19  violated the Constitution, laws, or treaties of the United States (citations omitted)."  Estelle v.

20  McGuire, 502 U.S. at 68.  After review of the record, this court finds there was no conflict

21  requiring application of estoppel principles.  Whether or not petitioner was found guilty of a

22  _____

23         [14]  "To the extent that any disparate treatment might result, from the decision not to award
     credits, or from the decision to define the term as commencing upon entry of the initial
24   commitment order, it is justified by the state's compelling interest in ensuring each person
     committed as an SVP, receive a maximum term of two years of treatment, and to protect the
25   public from premature release of a person whose mental disorder makes it likely that he or she
     will engage in sexually violent behavior."  Hubbart, quoting People v. Poe, 74 Cal.App.4th at
26   836.

1   general or specific intent crime bears no relevance to the later determination that he was presently

2   volitionally impaired and posed a danger if released.[15]  Petitioner's sixteenth claim for relief

3   should be denied.

4            Petitioner's seventeenth claim is that the SVPA proceedings violated the doctrine

5   of equitable estoppel in that the CDC and DMH actions in not referring him for treatment during

6   his term and their officials' assurances that petitioner did not meet SVPA criteria and would not

7   be referred, deprived petitioner of his federal and state constitutional rights.

8            This claim involves the application of two separate state statutes, the SVPA and

9   Cal. Penal Code § 2684, and implicates questions of state law which are not cognizable on

10  habeas review.  Estelle, 502 U.S. at 68.  Even assuming this court could reach the merits of this

11  claim, the doctrine of estoppel would not preclude the state from beginning SVP proceedings

12  against petitioner at the end of his prison term without having earlier referred him for mental

13  health treatment under § 2684.  Woodard, 242 F.Supp.2d at 707 (mental health care under

14  section 2684 is discretionary).  Petitioner's seventeenth claim for relief should also be denied.

15           Petitioner's eighteenth claim is that there was insufficient evidence that petitioner

16  committed predatory offenses or that he lacked volitional control.

17           The state court rejected this claim, first finding it unnecessary to reach the first

18  contention because California's SVPA "does not require the trier of fact to find that petitioner's

19  prior convictions involved predatory acts."  People v. Carmony, slip op. at 20.  As to volitional

20  control, the state court found that the

21           psychologists relied on their interviews with [petitioner], in
             addition to the facts underlying his 1982 prior convictions.  They
22           based their opinions on [petitioner's] pattern of behavior, lack of
             perception that his sexual behavior was wrong, presently
23           articulated fears that he would reoffend, and his continuing history

24   _____

25           [15]  Petitioner's claim that he should have been provided mental health treatment during
     his initial incarceration fails under the reasoning of Woodard, 242 F.Supp.2d at 707.  "Neither
26   section 1363 nor section 2684 'required' the state to provide any sort of treatment to petitioner,
     much less precluded the state from committing petitioner under SVPA."  Id.

1           of cognitive distortion which was essentially unchanged by the
2           legal sanctions he had suffered.  [The court concluded] this record
                supports the court's determination [petitioner] currently lacked
3           volitional control.

4   Id. at 20-21.

5         When a challenge is brought alleging insufficient evidence, federal habeas corpus

6   relief is only available if it is found that upon the record evidence presented at trial, viewed in the

7   light more favorable to the prosecution, no rational trier of fact could have found proof of guilt

8   beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319 (1979).  Under Jackson, the

9   court must review the entire record when the sufficiency of the evidence is challenged on habeas.

10  Adamson v. Ricketts, 758 F.2d 441, 448 n.11 (9th Cir. 1985), vacated on other grounds, 789 F.2d

11  722 (9th Cir. 1986) (en banc), rev'd, 483 U.S. 1 (1987).  It is the province of the jury to 'resolve

12  conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic

13  facts to ultimate facts."  Jackson, 443 U.S. 307, 319.  "The question is not whether we are

14  personally convinced beyond a reasonable doubt.  It is whether rational jurors could reach the

15  conclusion that these jurors reached."  Roehler v. Borg, 945 F.2d 303, 306 (9th Cir. 1991).

16  Under Jackson, the federal habeas court determines sufficiency of the evidence in reference to the

17  substantive elements of the criminal offense as defined by state law.  Jackson, 443 U.S. 307, 324

18  n.16.

19        After review of the record herein, this court finds there was sufficient evidence to

20  support petitioner's civil commitment.  Psychologists Dr. Debra Inman and Dr. Jack Vognsen,

21  both mental health experts, testified that in their opinion, petitioner was a sexually violent

22  predator.  They supported this finding by testifying that petitioner had committed sexually violent

23  offenses against more than two victims, that petitioner suffered from pedophilia, a diagnosed

24  mental disorder, which made him a danger to others and opined that petitioner was likely to

25  engage in sexually violent behavior if he were released.  (RT 12, 14-15, 18, 20, 26, 29-31, 33-34,

26  99, 104, 107, 113-16, 147, 174.)  These opinions were supported by their personal interviews

with petitioner as well as his prior criminal offenses.  Petitioner had committed multiple sex

offenses on four adolescent boys, which included sodomy, oral copulation and lewd and

lascivious conduct, and resulted in convictions and prison terms.  (CT 42-43.)  Based on this

record, there was sufficient evidence to support petitioner's civil commitment herein.

The state court's rejection of petitioner's eighteenth claim for relief was neither

contrary to, nor an unreasonable application of, controlling principles of United States Supreme

Court precedent.  Petitioner's eighteenth claim for relief should be denied.

Finally, petitioner's nineteenth claim is that there was insufficient foundation for

the actuarial instruments relied upon by the state's evaluators.

The state court rejected this claim, stating that "[c]ourts in SVPA cases routinely

admit expert medical testimony based in part on the results of actuarial instruments."  People v.

Carmony, slip op. at 19 [Citations omitted.]  The court noted that in civil commitment cases,

"expert prediction may be the only evidence available," (id.) because "the trier of fact is required

by statute to determine whether a person is dangerous or likely to be dangerous."  (Id.)  The state

court deferred to the trial court's determination of the weight accorded expert testimony and

would not "second-guess that determination on appeal."  (Id.)

As noted above, habeas corpus is not available for an alleged error in the

interpretation or application of state law.  Estelle v. McGuire, 502 U.S. 62 (1981).  The standard

of review for a federal habeas court "is limited to deciding whether a conviction violated the

Constitution, laws, or treaties of the United States (citations omitted)."  Estelle v. McGuire, 502

U.S. at 68.  A state court evidentiary ruling only violates the federal due process clause when

admission of the challenged evidence renders a trial fundamentally unfair.  See Estelle, at 70

(quoting Spencer v. Texas, 385 U.S. 554, 563-64 (1967)).

Petitioner's reliance on People v. Roberge, 85 Cal.App.4th 696 (2000) is

unavailing.  First, the Court of Appeal found there was an adequate evidentiary basis for

admission of expert opinion on whether Roberge was likely to reoffend and found there was

sufficient evidence to support his commitment as an SVP.  Second, the California Supreme Court subsequently granted review and ultimately decided the case on the issue of whether the judge must define "likely to reoffend" for the jury.  People v. Roberge, 29 Cal.4th 979 (2003).

This court has reviewed the record and determined that the admission of the challenged evidence did not render petitioner's trial fundamentally unfair.  Thus, the state court's rejection of petitioner's nineteenth claim for relief was neither contrary to, nor an unreasonable application of, controlling principles of United States Supreme Court precedent.  Petitioner's nineteenth claim for relief should be denied.

For the foregoing reason, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within ten days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:  December 19, 2006.

UNITED STATES MAGISTRATE JUDGE

001; carm0927.157

28